George P. McLAUGHLIN,
Petitioner-Appellant,

v.

Douglas VINZANT, Superintendent,
etc., Respondent-Appellee.

No. 74–1376.

United States Court of Appeals,
First Circuit.

Argued March 4, 1975.

Decided June 18, 1975.

Rehearing Denied Aug. 1, 1975.
Certiorari Denied Dec. 15, 1975.
See 96 S.Ct. 573.

Lois M. Lewis, Newton, Mass., by appointment of the Court, for petitioner-appellant.

Barbara A. H. Smith, Hingham, Mass., and John J. Irwin, Jr., Asst. Atty. Gen., Chief, Crim. Div., and Francis X. Bellotti, Atty. Gen., Boston, Mass., were on brief, for respondent-appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

In 1965, following a jury trial in the Massachusetts Superior Court, appellant George P. McLaughlin was convicted of murder in the first degree and of unlawfully carrying a firearm. The judgment was subsequently affirmed upon direct review in the Supreme Judicial Court. *Commonwealth v. McLaughlin*, 352 Mass. 218, 224 N.E.2d 444, *cert. denied sub nom., McLaughlin v. Massachusetts*, 389 U.S. 916, 88 S.Ct. 250, 19 L.Ed.2d 268 (1967), and McLaughlin later filed a motion for a new trial. While his appeal from the trial court's denial of this motion was pending in the Supreme Judicial Court, he petitioned the District Court for the District of Massachusetts for a writ of habeas corpus. Final action with respect to this petition was not taken until after the Supreme Judicial Court affirmed the denial of McLaughlin's new trial motion. *Commonwealth v. McLaughlin*, Mass., 303 N.E.2d 338 (1973). McLaughlin thereafter amended his petition for habeas corpus, raising only two issues and substituting his present custodian as respondent. The district court denied the amended petition, but issued McLaughlin the certificate of probable cause necessary to bring this appeal. 28 U.S.C. § 2253.

I

McLaughlin contends that the admission of testimony as to a codefendant's out-of-court statement violated his rights under the confrontation clause of the sixth amendment, as made mandatory upon the states by the fourteenth. *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). This claim requires us to relate some of the proceedings and testimony at McLaughlin's trial.

McLaughlin was charged with having shot and killed William J. Sheridan. McLaughlin, Sheridan, and others had attended a party held in a second floor apartment at 55 Yeoman Street, Roxbury, Massachusetts, and there was testimony that Sheridan had left the apartment following an argument with another guest. McLaughlin and his companion, Maureen Dellamano, left the party together and in the hall landing encountered several other guests who had been ejected from the party shortly after Sheridan departed. McLaughlin asked these persons to "clear the hallway" and got into an altercation with one of them. He then went downstairs and entered the first floor apartment where Dellamano lived. Within a very short time thereafter Sheridan was shot while standing in the open doorway of the entrance to 55 Yeoman Street. A witness, Josselyn, who had been standing in the courtyard of 55 Yeoman Street at that time, testified to having seen McLaughlin fire the fatal shot.

The testimony to which appellant directs his sixth amendment argument related for the jury statements made by Maureen Dellamano immediately after the shooting. Three witnesses, who had remained in the second floor apartment where the party was still breaking up, recounted that after they heard what they described as a "loud bang," a "bang," and "a noise like a firecracker," Dellamano came running through the door of that apartment and said "George shot someone" or "George shot somebody." The witnesses estimated that this occurred from "a couple of seconds" to "a minute or so" after they heard the shot. Two of the witnesses testified that when she made the statement Dellamano seemed "shaken up," "nervous," or "hysterical."

■ Dellamano was indicted as an accessory after the fact in the murder of Sheridan, and she was tried jointly with McLaughlin and two other alleged accessories. She did not take the stand, and thus appellant was unable to cross-examine her concerning her alleged remarks. McLaughlin, relying principally upon *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), contends that the admission of testimony as to Dellamano's statement denied him the right "to be confronted with the witnesses against him." U.S.Const. amend. VI. We disagree.

Appellant's confrontation clause argument, like the other claim presented in his petition for habeas corpus, was fully considered by the Supreme Judicial Court on his motion for a new trial. That court held that the testimony repeating Dellamano's declaration, although hearsay, was admissible against appellant under the spontaneous utterance exception to the hearsay rule. Mass., 303 N.E.2d at 347–48. We are of course bound by the Massachusetts court's interpretation of state evidentiary law; and we note, as a feature distinguishing this case from *Bruton*, that the codefendant's declaration in *Bruton* was "clearly inadmissible against him under traditional rules of evidence." 391 U.S. at 128 n.3, 88 S.Ct. at 1623. Such was not true here.

The distinction does not end our inquiry, however, for while both the confrontation clause and the hearsay rule are intended to provide similar safeguards to the integrity of judicial fact-finding, the Supreme Court has rejected the suggestion that the sixth amendment codified common law hearsay principles. *California v. Green*, 399 U.S. 149, 155–56, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); *see Dutton v. Evans*, 400 U.S. 74, 86, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970); *cf. Green*, 399 U.S. at 173, 90 S.Ct. 1930 (Harlan, J., concurring). Justice Stewart's plurality opinion in *Dutton* described "the mission of the Confrontation Clause [as advancing] a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that 'the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement'" 400 U.S. at 89, 91 S.Ct. at 220 (quoting *Green*, 399 U.S. at 161, 90 S.Ct. 1930).

Although appellant was unable to cross-examine Dellamano he, like the defendant in *Dutton*, was able to effectively exercise his right of confrontation on the factual question of whether the three witnesses had actually heard her make the statement inculpating him in the crime. *Cf.* 400 U.S. at 89, 91 S.Ct. 210. Thus, we look to see whether the circumstances surrounding the utterance gave it sufficient "indicia of reliability" to place it before the jury. *Id.; Mancusi v. Stubbs*, 408 U.S. 204, 213, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972).

■ The remark followed hard upon an event—a shooting—likely to produce the utmost in excitement and shock and to ensure the utterance's spontaneity and, presumably, its truthfulness. Dellamano appeared shaken at the time of her statement. Appellant argues that Dellamano's nervous or hysterical condition might have made her an inaccurate reporter of what had just transpired. However, while the danger has been recognized that excited utterances may be lacking in precision, *see, e. g.*, Hutchins & Schlesinger, *Some Observations on the Law of Evidence*, 28 Colum.L.Rev. 432, 437–39 (1928), Dellamano's recitation in this case was not factually complex and presented little opportunity for the type of inaccuracy as to details which excitement might cause. The spontaneous exclamation exception to the hearsay rule is one of long standing and is embodied in the newly adopted Federal Rules of Evidence, *see* Fed.R.Evid. 803(2). We think that neither this exception in general nor its application permitting the admission of testimony as to Dellamano's utterance contravenes the

policy embodied in the confrontation clause.[1]

■ Appellant's alternate contention is that there is a fatal inconsistency in the state's supposition that the statement was both sufficiently spontaneous to come within the hearsay exception and necessarily represented a reporting of Dellamano's own observations. In McLaughlin's view, the physical layout of 55 Yeoman Street makes it impossible for Dellamano to have witnessed the shooting on the first floor and then reentered the second floor apartment within a few seconds. But a court was entitled to understand the stated time intervals as shorthand expressions indicating a "very short time" and not as literal measurements.[2] Appellant admits that the testimony of one of the witnesses to the effect that Dellamano reentered the apartment "a minue or so" after the shot would be consistent with her being in a position to actually witness the shooting. It is true that there is no evidence of precisely where Dellamano was and what events she witnessed leading her to announce that McLaughlin had shot Sheridan. But, it was permissible to draw an inference not only from the force of the statement itself but from the fact that she was accompanying McLaughlin and was somewhere in the immediate vicinity of the fatal event, that she possessed firsthand knowledge of the killing. See McCormick on Evidence § 297 at 705 (2d ed. 1972).

■ If so, McLaughlin is left with the argument that the passage of a minute necessarily refutes any finding that Dellamano was still acting under the effect of the shooting. However, we find no reason to disagree with the Supreme Judicial Court's conclusion that the facts permit a finding that Dellamano's state-

ment was sufficiently spontaneous to come within the accepted hearsay exception for declarations made before there has been time to contrive or misrepresent. See Mass., 303 N.E.2d at 347. Moreover, while there was some ambiguity in the transcript concerning the trial court's ruling on these issues, nothing has been suggested to us indicating that Dellamano had any reason for falsifying her statement.

We thus conclude that the sixth amendment was not violated by placing Dellamano's excited utterance before the jury.

## II

■ Appellant also claims that his fourteenth amendment right to a fair trial was infringed due to prejudicial publicity before and during his trial. His argument regarding pre-trial publicity was presented to the Supreme Judicial Court upon direct appeal from his conviction, and we think the court's disposition was correct. McLaughlin has pointed to no specific items indicative of the "massive inflammatory publicity which had been both national and local" alleged in his brief. And as the trial, delayed some six months at his request, was held a year and a half after the killing and eight months after McLaughlin's arrest, the effect of any such publicity would seemingly have been greatly diminished. He does cite a newspaper story published just before the trial began which linked him with underworld killings which had been approaching epidemic proportions in the 18 months preceding the trial. However, examination of the transcript of the voir dire reveals that the trial court was extremely scrupulous in adhering to its pledge that "no one is going to sit on the jury if he is in anyway influenced or has been influ-

---

1. This is not to say that every exception in the new Rules which permits the admission of hearsay necessarily satisfies the requirements of the confrontation clause. See Advisory Comm. Introd. Note to Fed.R.Evid. Art. VIII, *Hearsay: Confrontation and Due Process*, 56 F.R.D. 183, 291–92 (1972).

2. We thus see no merit in appellant's motion, filed after oral argument, to enlarge the record by filing architectural plans of 55 Yeoman Street, ostensibly so that we could see that Dellamano could not have witnessed the shooting and climbed the stairs to the room within, literally, several seconds.

enced by anything he said or heard or read outside of the courtroom." The jurors selected, having been carefully screened for any traces of prejudice, were sequestered throughout the trial. We are not in disagreement with the Massachusetts court that "[f]rom an examination of the [trial] transcript [there is] no indication that McLaughlin was tried before a prejudiced jury." 352 Mass. 218, 224–25, 224 N.E.2d 444, 449.

■ In his motion for a new trial appellant asserted that one juror saw prejudicial material during the trial. The Massachusetts court refused to consider the claim on the merits, ruling that appellant was procedurally foreclosed from arguing a ground available and known to him prior to bringing his direct appeal. Mass., 303 N.E.2d at 349–50. McLaughlin now urges this issue in federal court upon his petition for a writ of habeas corpus. As there is no showing that he knowingly waived his federal rights, if any, we review the merits of this due process claim. *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

Appellant points to the transcript of the 1970 hearing on his motion for new trial held before the same judge who presided at the trial in 1965. A colloquy between the judge and appellant's counsel—not his counsel at trial—indicated that at some point during the trial one of the jurors had seen a copy of a newspaper which apparently reported the death of appellant's brother, who had been shot down one morning while on the way to attend appellant's trial. This was brought to the attention of the trial court, which held a voir dire of this juror and, being satisfied that no harm had been done, returned the juror to the venire.

No other record of this incident exists. There is nothing to show who the juror was, exactly what he saw, what questions were asked by the court, what responses were made by the juror, or what instructions the court gave the juror before permitting him to return to the venire. Moreover, as there were four alternate jurors impanelled, there is nothing to indicate whether the juror who saw the newspaper story actually participated in the deliberations on appellant's guilt. If we thought the answers to these questions were crucial to determination of appellant's fourteenth amendment claim, we might remand to the district court for an evidentiary hearing.[3] 28 U.S.C. § 2254(d). However, upon reviewing appellant's argument presented in his petition and his brief here, we see no grounds for granting him the relief he seeks.

Appended to McLaughlin's petition are copies of a number of local newspaper stories reporting on his brother's death. He contends that they must have been at least "similar" to the article seen by the unidentified juror. Even if we were to assume that the juror saw one of these articles, we see no reason to conclude that appellant's constitutional rights were violated.

It may be inferred from the trial court's actions and its statements at the hearing on the new trial that it found this juror remained neutral and unbiased.[4] Even though no express findings were made, they can be sufficiently reconstructed so as to obviate the need for an evidentiary hearing under *Townsend v. Sain*, 372 U.S. 293, 313–15, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). The trial court was plainly acting with awareness of the correct standard of law and took appropriate action to determine if appellant's rights had been infringed. Thus, unless the newspaper account which allegedly reached this juror was so prejudicial that exposure would irremediably have caused a loss of the requisite neu-

---

3. As the trial was in 1965, ascertaining the facts would, of course, seem likely to present considerable difficulty.

4. During the new trial hearing the trial court recalled his examination of the juror and stated:

"If he was prejudiced by it in any way, then I should have excused him. . . . [I]f he talked with anybody else on the jury, I would have to excuse all the jury and declare a mistrial."

trality and detachment, the court's decision must stand.

The Supreme Court has sanctioned federal relief from state criminal judgments in instances where the claim was based upon prejudicial publicity, *see Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); *Estes v. Texas*, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); *Turner v. Louisiana*, 379 U.S. 466, 90 S.Ct. 642, 24 L.Ed.2d 610 (1965); *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); *cf. Rideau v. Louisiana*, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963), but in each of these cases the facts demonstrated much more strongly the inevitable nature of the prejudice than do those of the instant appeal.[5] The stories accompanying appellant's petition relate the gangland style slaying of appellant's brother and recount several other similar incidents from which he had recently escaped. Some also recount the murder of another brother four years previously; link the McLaughlin brothers to underworld violence; indicate that appellant had been on the FBI's "most wanted" list prior to his capture; and report current proceedings surrounding appellant's trial, including the authorities' efforts to ensure his safety and the court's denial of his motion for a mistrial. While all of this information is matter which should be kept from a jury, we are not prepared to say that a juror's exposure to some part of it would be so inflammatory that "prejudice is inherent in it." *Estes, supra* 381 U.S. at 543, 85 S.Ct. 1628. We hold that McLaughlin was not denied his fourteenth amendment right to a fair trial.

*Affirmed.*

## MEMORANDUM AND ORDER ON PETITION FOR REHEARING

■ McLaughlin points out that an assertion in our opinion, also in the opinion of the Massachusetts Supreme Court, 303

N.E.2d 338, 341, is unsupported by testimony in the record, namely that McLaughlin and Dellamano left the party together. There is, however, evidence that McLaughlin and Dellamano were at the party with one another and that McLaughlin went to Dellamano's apartment on the first floor of the same building after he left the party. Then, after the sound of shots, Dellamano reappeared on the second floor in an excited state saying that George had shot someone and "George did it—he did it." Another witness, Josselyn, testified to having witnessed McLaughlin fire the fatal shot. These facts, even without the one lacking in testimonial support, support the inference stated in our opinion, that Dellamano "was somewhere in the immediate vicinity of the fatal event." Given "circumstances . . . consistent with opportunity" to observe the event to which declarant testifies, the jury can infer from the statement itself an opportunity to observe. McCormick on Evidence § 297, at 707 (2d ed. 1972).

McLaughlin asserts in his petition for rehearing that McCormick's view "conflicts" with Wigmore and others "as to the necessity of the declarant being a participant, a bystander or an observer to the startling event." We see no conflict. There must be an apparent opportunity to observe. The question is the proof necessary to establish adequate observation. In *People v. Poland*, 22 Ill.2d 175, 174 N.E.2d 804, 808, cited in the 1972 Supplement to 6 J. Wigmore, Evidence § 1751 (3d ed.), it is stated by Hershey, J.,

"The cases suggested by Wigmore are clearly distinguishable from the instant situation. In each of Wigmore's illustrations, it is obvious that the declarant did not and could not have observed personally the matters stated in the declaration. Here, on the contrary, there is nothing to indicate that Sophia Poland could not have seen or

---

5. We distinguish the constitutional standard applicable to state cases upon habeas corpus from the doubtless stricter standard appropriate in the exercise of federal supervisory authority over the lower federal courts. *See Marshall v. United States*, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959).

454

did not see the killing, and there is a strong inference from the declaration itself and the surrounding circumstances that she did. We do not understand the requirement to be that the party seeking to have the declaration admitted must prove by direct evidence beyond any possibility of speculation that the declarant personally observed the matters. If such were the rule, there would hardly ever be a case in which a declaration would be admissible. Rather, we think it is sufficient if it appears inferentially that the declarant personally observed such matters and that there is nothing to make a contrary inference more probable."

While the facts from which to infer that Dellamano witnessed the shooting are not quite as detailed as in *Poland* (otherwise a very similar case), we think they were a sufficient predicate to meet constitutional requirements.

The other matters set forth in the petition for rehearing were fully considered in the course of the appeal, and do not warrant a rehearing.

*Petition for rehearing denied.*