Vincent J. FLEMMI, Petitioner,

v.

Frank O. GUNTER, Superintendent, Massachusetts Correctional Institution Walpole, Massachusetts, Respondent.

Civ. A. No. 74–5178–T.

United States District Court, D. Massachusetts.

Jan. 19, 1976.

On Motion for Reconsideration March 4, 1976.

Oteri & Weinberg, Martin G. Weinberg, Boston, Mass., for petitioner.

Barbara A. H. Smith, Asst. Atty. Gen., Boston, Mass., for respondent.

## OPINION

TAURO, District Judge.

Vincent J. Flemmi is currently confined at M.C.I. Walpole following his conviction in March 1970 on a charge of assault with intent to murder and related offenses. He brings this action for a writ of habeas corpus, claiming that various evidentiary rulings made during the course of his trial in Suffolk Superior Court deprived him of his rights under the Fourth, Fifth, Sixth and Fourteenth Amendments.

The issues raised in the instant petition formed the basis of petitioner's second motion for a new trial brought in Suffolk Superior Court some months after his right of direct appeal had expired.[1] Mass.Gen.Laws ch. 278, § 29. The motion was denied on the merits, after a hearing, and the Massachusetts Appeals Court affirmed in a lengthy opinion. *Commonwealth v. Flemmi*, [1974] Mass. App.Adv.Sh. 867, 316 N.E.2d 740. The Supreme Judicial Court denied petitioner's Request for Further Appellate Review.[2]

### I

At petitioner's trial, the Commonwealth sought to prove the following facts.

In late 1969, the petitioner was rumored to have accused one Abboud of "talking to the cops." When Abboud learned of these allegations, he sought out the petitioner to discuss the matter and, on December 26, 1969, found him at a restaurant. The petitioner pressured Abboud to give him a ride and the two men left the restaurant in an automobile driven by a friend of Abboud, who apparently knew both men. Abboud sat on the passenger's side of the front seat, but was turned toward the petitioner, who was seated in the rear. Abboud, already fearful of an attempt on his life, saw the petitioner draw a pistol and point it in his direction. Thereupon, Abboud threw himself in the rear of the automobile in order to take the gun away from the petitioner. As he did, the driver of the moving vehicle fled. A struggle between the petitioner and Abboud ensued, in the course of which the gun fired and the petitioner was wounded. The driverless car crashed into a parked car. Abboud fled.

Shortly after the incident, the petitioner received a telephone call at his home from one Richard O'Neil. O'Neil told the petitioner to call Abboud at a Somerville telephone number. The petitioner did so and Abboud answered the phone. Unbeknownst to the petitioner, the conversation was instituted at the request of the police while they had Abboud in custody, and was tape recorded by them. The parties apparently do not dispute, and the Appeals Court found, that Abboud consented to this procedure. [1974] Mass.App.Adv.Sh. at 872, 316 N.E.2d at 743. No warrant or other judicial sanction was obtained prior to the recording of the conversation.

The petitioner was eventually incarcerated on charges stemming from this incident in the Suffolk County Jail. At

---

1. Prior to the conclusion of petitioner's trial, he absconded and the proceedings were completed in his absence. By the time he was recaptured in October 1970, he had lost his right of appeal. He soon moved for a new trial, claiming that his conviction in absentia was a violation of due process. On December 1, 1970, the judge who had presided over his trial denied the motion and imposed sentence. The Supreme Judicial Court affirmed. *Commonwealth v. Flemmi*, 360 Mass. 693, 277 N.E.2d 523 (1971).

When the petitioner made his second motion for a new trial in June 1972, the original trial judge had died and the matter was referred to another judge of the Superior Court.

2. In preparing this opinion, the court has relied upon the opinion of the Appeals Court, *see Velleca v. Superintendent M.C.I. Walpole*, 523 F.2d 1040 (1st Cir. 1975), as well as the relevant portions of the trial transcript and the transcripts of post-trial proceedings.

that time, he purportedly had a conversation with one Carita, the contents of which will be more fully described below.

## II

The evidence of the shooting, and of Abboud's subsequent conversation with the petitioner was elicited during Abboud's direct testimony at the petitioner's trial. Partway during his examination, the assistant district attorney asked Abboud to relate the contents of the taped conversation. Defense counsel promptly requested a voir dire, and an unrecorded bench conference ensued.

According to the petitioner, the assistant district attorney informed the judge at the bench that he had a typewritten memorandum of the conversation. The prosecutor allegedly also indicated that he intended to ask Abboud if the petitioner had said to him "Why did you shoot me?" and that he expected the answer to be, "Why did I try to shoot you? You tried to shoot me." Upon learning that the prosecutor expected to elicit this testimony from Abboud, defense counsel agreed to drop his request for a voir dire, believing that the testimony would be favorable to the petitioner's case.

When the examination resumed, Abboud testified about the conversation, omitting that portion which the prosecutor had supposedly indicated Abboud would relate. During this testimony, the District Attorney refreshed the witness' recollection with a document. The record does not clearly reveal either the nature or contents of that document.

At the conclusion of Abboud's direct testimony, defense counsel requested a second, recorded, bench conference. At this time he moved to "be furnished with all statements in the possession of the District Attorney's Office, given by this witness, having to do with the circumstances that took place that night." In the course of that bench conference the following colloquy took place:

Defendant's Counsel: . . . I . . . point out, Your Honor, at the bench here, with regard to my previous motion for a voir dire, . . . the Assistant District Attorney indicated [at the first bench conference] that this witness was going to testify with regard to the telephone conversation that the [petitioner] said, "Why did you try to shoot me?" And he has not so testified during the course of that conversation.

The Prosecutor: Get it on cross-examination. It's as simple as that.

The discussion then shifted to other matters and the judge called a recess without ruling on the defendant's motion. When court reconvened, the colloquy continued.

Defendant's Counsel: May I . . . have my motion for statements . . . that he furnished law enforcement officers?

The Judge: Well, what do you say about that?

The Prosecutor: Well, Your Honor, I know of no law in this Commonwealth where statements by witnesses must be furnished to defense counsel.

The Judge: "I'll deny that motion and save your rights." [3]

[1974] Mass.App.Adv.Sh. at 871, 316 N.E.2d at 743.

Abboud was then cross-examined for some time before defense counsel reached the subject of the telephone conversation. At that point he learned for the first time that the police had recorded the conversation and Abboud had consented to their doing so. When asked whether during that conversation the defendant had said, "Why did you shoot me?", Abboud said no. That answer was immediately followed by another colloquy.

Defendant's Counsel: I'll renew my motion, if Your Honor please, to produce.

---

**3.** Petitioner also moved for copies of Abboud's grand jury testimony. The trial court's denial of that motion is not contested here.

The Judge: What?

Defendant's Counsel: Any statement.

The Judge: No. I'll exclude it and save your rights. We have been over that already and I have already excluded it.

[1974] Mass.App.Adv.Sh. at 872, 316 N.E.2d at 743.

The petitioner's counsel then moved "that the defense be furnished the tape recording of this conversation." *Id.* He argued that he needed the tape to establish the fact that the defendant had asked Abboud "Why did you shoot me?"

The judge denied the motion, and the petitioner's counsel excepted. The subject was ended (and never again raised at the trial) by the following exchange:

The Judge: I am referring specifically to the tape recorder (sic).

Defendant's Counsel: Yes.

The Judge: Not the conversation as related from the witness stand by this witness or any other witness.

Defendant's Counsel: Yes, Your Honor.

No effort was made by the prosecutor at any time to introduce the tape recording into evidence.

[1974] Mass.App.Adv.Sh. at 872, 316 N.E.2d at 743–44.

The petitioner now argues that he was constitutionally prejudiced by:

1. The introduction of Abboud's testimony about the telephone conversation with the defendant;

2. The refusal of the trial judge to permit the defendant to inspect the documents used by the prosecutor to refresh Abboud's recollection;

3. The refusal of the trial judge to provide the defendant a copy of the tape recording itself.

### III

The petitioner's first argument is that the Commonwealth's failure to provide him with a transcript of his conversation with Abboud, or a statement of the evidence heard as a result of the transmission, renders the evidence "illegally obtained" under Massachusetts law. Accordingly, the petitioner appears to argue that the refusal of the trial court to exclude Abboud's testimony about that conversation, in the face of a Massachusetts statute which allegedly required the court to do so under the circumstances, constituted a violation of his constitutional rights, presumably of due process. Moreover, the petitioner argues that, regardless of the statute, the court's permitting Abboud to testify about a surreptitiously recorded conversation, without any prior warning to the petitioner of the prosecutor's intentions, resulted in a violation of petitioner's rights under the Fourth Amendment.

### A.

Petitioner's first claim is clearly without merit. Mass.Gen.Laws ch. 272, § 99(O) prohibits the introduction of evidence at state criminal proceedings based on clandestine "interceptions" without compliance with a panoply of procedures, including notice, outlined by the statute. Yet the definition of "interception" for purposes of § 99(O), does not include conversations which one party has given police authorization to record, Mass.Gen.Laws, ch. 272, § 99 (B)(4),[4] nor does § 99(O) appear to allow the exclusion of the testimony of a participant about a recorded conversation which is based solely upon the participant's independent recollection. Moreover, even if § 99(O) did in some way preclude the introduction of Abboud's testimony, the Massachusetts Appeals Court held in the instant case that Flemmi's failure to properly object to the introduction of the testimony constituted a waiver of his rights under the statute. *Commonwealth v. Flemmi* [1974] Mass.App.Adv.Sh. at 873, 316 N.E.2d at 744 (1974). Because this ruling constitutes an authoritative decision

---

**4.** Title III of the Omnibus Crime Control and Safe Streets Act of 1968 takes the same approach. 18 U.S.C. § 2511(2)(c).

by a Massachusetts court that the petitioner has waived his rights under state law, it cannot be disturbed here. Accordingly, the petitioner cannot claim that Massachusetts has ignored its own statute. His due process claim must, therefore, fail.

### B.

[4–7] Petitioner's Fourth Amendment argument is similarly without merit.[5] Nothing in that amendment precluded Abboud from testifying from his own recollection about a conversation in which he had participated. It is well settled that a party to a telephone conversation has no reasonable expectation that the person on the other end will not reveal its contents. As the Court noted in *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), the Fourth Amendment does not shield a defendant from a "misplaced belief that a person to whom he voluntarily confides

his wrongdoing will not reveal it."[6] *Id.* at 302, 87 S.Ct. at 413.

Moreover, the same considerations would apply if Abboud had consented to police recording of his conversation with petitioner and evidence based on that recording was then introduced at petitioner's trial.[7] "Both forms of publication are . . . risks that the speaker who unveils confidential information must recognize. The mechanical ear of the recorder is no different than the ear of a listener with a precise memory." *United States v. Santillo*, 507 F.2d 629, 634 (3rd Cir.), *cert. denied*, 421 U.S. 968, 95 S.Ct. 1960, 44 L.Ed.2d 457 (1975).

■ The petitioner claims that his failure to receive notice that Abboud was to testify about a recorded conversation required the trial judge at least to exclude that testimony on Fourth Amendment grounds. The case on which petitioner relies, *Berger v. New York*, 388

---

5. The Commonwealth argues that this court should adopt the Appeals Court holding that the petitioner has also waived his rights under the fourth amendment by allowing Abboud to testify without objection after the first bench conference and then failing to move to strike the objectionable portions of Abboud's testimony. [1974] Mass.App.Adv.Sh. at 873, 316 N.E.2d at 744 (1974). *See Peterson v. Gaughan*, 404 F.2d 1375 (1st Cir. 1968).

A state court's determination of waiver of federal constitutional rights does not bar independent determination of this question by a federal court in the context of a habeas petition, "for waiver affecting federal rights is a federal question." *Fay v. Noia*, 372 U.S. 391, 438–39, 83 S.Ct. 822, 849, 9 L.Ed.2d 837 (1963). *See Pope v. Swenson*, 395 F.2d 321, 322–23 (4th Cir. 1968). The record available to this court does not provide any indication that petitioner, as opposed to counsel, knowingly and intelligently abandoned his rights under the Fourth Amendment. *Fay v. Noia, supra*, 372 U.S. at 439, 83 S.Ct. 822; *McLaughlin v. Vinzant*, 522 F.2d 448, 452 (1st Cir. 1975). Moreover, counsel's willingness to permit Abboud to testify seems to have been based, at least in part, on representations of the prosecution which later proved to be erroneous. Accordingly, on the record presented, the court cannot hold that petitioner waived his rights to raise a Fourth Amendment challenge to Abboud's testimony.

6. Although *Hoffa* preceded *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), there seems to be no dispute by any member of the Court with Justice White's statement in his plurality opinion in *United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), that *Katz* left *Hoffa* "undisturbed." *Id.* at 749, 91 S.Ct. 1122.

7. At least four, and possibly five, members of the Court so concluded on pre-*Katz* Fourth Amendment principles. *United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971). Moreover, in spite of Justice Harlan's dissent in *White, id.* at 768–95, 91 S.Ct. 1122, the eight circuits which have decided the question since *Katz* have reached the same result. *United States v. Santillo*, 507 F.2d 629 (3rd Cir.), *cert. denied*, 421 U.S. 968, 95 S.Ct. 1960, 44 L.Ed.2d 457 (1975); *United States v. Lippman*, 492 F.2d 314, 318 (6th Cir. 1974), *cert. denied*, 419 U.S. 1107, 95 S.Ct. 779, 42 L.Ed.2d 803 (1975); *United States v. Bonanno*, 487 F.2d 654, 658 (2d Cir. 1973); *Ansley v. Stynchcombe*, 480 F.2d 437, 441 (5th Cir. 1973); *United States v. Dowdy*, 479 F.2d 213, 229 (4th Cir.), *cert. denied*, 414 U.S. 823, 94 S.Ct. 124, 38 L.Ed.2d 56 (1973); *Meredith v. Gavin*, 446 F.2d 794, 797 n.3 (8th Cir. 1971); *Holmes v. Burr*, 486 F.2d 55 (9th Cir.), *cert. denied*, 414 U.S. 1116, 94 S.Ct. 850, 38 L.Ed.2d 744 (1973); *United States v. Quintana*, 457 F.2d 874 (10th Cir.), *cert. denied*, 409 U.S. 877, 93 S.Ct. 128, 34 L.Ed.2d 130 (1972).

U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967), however, involved an entirely different situation. There, the Court invalidated a New York statute which allowed a state trial judge to authorize electronic surveillance, but did so because the police were not required to make a particularized showing of probable cause, and the state was not required to provide notice to a defendant that his conversation had been recorded. *See United States v. Eastman,* 465 F.2d 1057 (3rd Cir. 1972). Fundamental to the Court's reasoning in *Berger,* however, was its conclusion that the bugging of conversations in that case, which had been done without the *consent* of any participant, constituted a "search" making the introduction of recordings of those conversations at trial, under the circumstances presented, a violation of the fourth amendment. 388 U.S. at 51, 87 S.Ct. 1873. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). In the instant case, by contrast, the recording of the conversation in question seems to have been consented to by one of the participants and, therefore, did not invade the petitioner's justifiable expectation of privacy. Of equal significance, there is no indication that either the recording or any evidence based upon *it* was introduced at trial. Accordingly, there is no basis for applying the notice requirement of *Berger* to the facts of the instant case. *See also United States v. Eastman,* 465 F.2d 1057 (3rd Cir. 1972).

### IV

■ Petitioner also alleges that he should have been allowed to see a copy of the memorandum which was used by the Commonwealth to refresh the recollection of the witness Abboud either as an aid to his own cross-examination of Abboud, *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) or

because the material was exculpatory. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Although the record does not indicate what this memorandum represented, there is some indication that it was a transcript made from the tape recording of the original conversation. The Appeals Court noted that the parties had stipulated that the document used at trial, as well as the tape, contained a statement by petitioner "Why did you shoot me?"

None of the theories cited by the petitioner to support his claim that the document should have been turned over to him to aid his cross-examination is relevant, because there is no indication in the record that any request for this document was ever made at the petitioner's trial, or that the prosecution refused to allow petitioner's counsel access to it. This was the finding of the Appeals Court, [1974] Mass.App.Adv.Sh. at 876, 316 N.E.2d at 745–46, and the petitioner has not sought to introduce any evidence to the contrary. The only requests relating to this material which appear on the record are the motion for the tape recording itself and a vague motion for the production of all statements made by the witness Abboud to law enforcement officers. Neither request could reasonably be construed as bringing the matter fairly to the attention of the trial court. The obvious conclusion, as indicated by the Appeals Court, is that petitioner's counsel did not want the memorandum. [1974] Mass.App.Adv.Sh. at 876, 316 N.E.2d at 746.[8]

Petitioner's alternate rationale for claiming that he should have received the memorandum—that it contained *Brady* material—must fail because there is no indication that the memorandum contained any exculpatory material.[9] When this matter was first raised in connection with the petitioner's second motion for a new trial, the document in

---

8. This court is, of course, bound by Massachusetts' interpretation of state evidentiary law. *McLaughlin v. Vinzant,* 522 F.2d 448, 450 (1st Cir. 1975).

9. The petitioner's failure to request the materials did not deprive him of his rights under *Brady.* *Davis v. Heyd,* 479 F.2d 446, 454 (5th Cir. 1973).

question had been lost. At that time, however, the parties stipulated that the document had existed and that the "highly exculpatory material" contained in the memorandum was a report that the petitioner had said to Abboud "Why did you shoot me?" There was no agreement, however, on the context of that remark or Abboud's response to it.

Faced with this situation, the motion judge took testimony on those questions. According to the defendant, Abboud's response was that he had shot the defendant because the defendant had claimed that Abboud "was talking to the cops" which, if true, may well have made the material exculpatory. On the other hand, the prosecution testified that Abboud's response was "Why did I try to shoot you? You tried to shoot me." On the basis of this testimony, the motion judge ruled that "[t]he defendant's contention that the aforementioned self-serving statement ['Why did you shoot me?'] . . . made during the telephone conversation was exculpatory is without merit when viewed in the totality of the telephone conversation and the damaging admissions made by the defendant therein." The Appeals Court took this ruling to mean that the motion judge adopted the prosecutor's version of events, and rejected the petitioner's.[10]

[1974] Mass.App.Adv.Sh. at 875, 316 N.E.2d at 745. The petitioner has not offered this court any reason to question the motion judge's factual findings.[11] Nor has he offered any basis for upsetting the state courts' conclusion that the missing memorandum, including both petitioner's comment and Abboud's response, was in any way inconsistent with the prosecutor's view of the case, or in any other way, exculpatory.[12]

## V

The petitioner also argues that, even if the memorandum of his recorded conversation with Abboud was not exculpatory, the tape recording of that conversation was exculpatory and should have been turned over to him on those grounds alone. The petitioner's theory is that the general tone of the conversation would indicate that Abboud, as opposed to the petitioner, was the aggressor. This claim is without merit.[13]

The tape was introduced by the parties at an evidentiary hearing before this court, although petitioner's statement "Why did you shoot me" and Abboud's response had been accidentally erased by that time. Accepting the motion judge's finding as to Abboud's response, this court cannot conclude that the tape,

10. The parties do not dispute the Appeals Court's conclusion that the motion judge's comments constituted a finding of fact embracing the prosecutor's view of the missing portion of the conversation.

11. The motion judge's finding is a straight-forward factual determination entitled to a presumption of regularity in the context of a habeas petition. 28 U.S.C. § 2254(d)(8). The petitioner has not offered any evidence which, if believed, would rebut this presumption or which challenges the integrity of the state's fact-finding process.

12. Of course, had there been such evidence offered, this court would have been able to determine for itself whether the memorandum was exculpatory for in this case that issue presents a mixed question of law and fact. *See, e. g., Davis v. Heyd,* 479 F.2d 446 (5th Cir. 1973).

At an evidentiary hearing before this court, the petitioner did offer a document purporting to be a partial transcript of the tape recorded

conversation between petitioner and Abboud. Petitioner stopped short, however, of claiming that this was the document used by the prosecution to refresh Abboud's recollection at petitioner's trial. Transcript of Evidentiary Hearing at 4.

Assuming arguendo that this document, supplemented by the missing statements, constituted the elusive memorandum, this court finds that it was not exculpatory. The dialogue is entirely consistent with the prosecutor's theory that the petitioner had unsuccessfully attempted to set up Abboud and was now trying to do so again. This is especially true in light of the language "added" by the motion judge. Moreover, since it was the petitioner who was actually injured in the assault attempt, it is not surprising, and hardly exculpatory, that petitioner accused Abboud of shooting him.

13. Petitioner did request the tape recording at trial. *See* part II *supra.*

when viewed as a whole, was in any way exculpatory.

The general tenor of the interchange indicates an attempt by the petitioner to intimidate Abboud, rather than any effort by petitioner to demonstrate his own innocence. And since it was the petitioner who was actually injured in the assault attempt, it is not surprising and hardly exculpatory that he accused Abboud of shooting him. Abboud comes across as a very frightened, perhaps naive individual, considerably shaken by what appears to him to have been an attempted assassination. By contrast, petitioner appears to be cool and collected, possibly trying once again to meet Abboud and resolve their differences.

Accordingly, under these circumstances, the prosecutor had no duty under *Brady* to turn over the recording to the petitioner.

## VI

The petitioner's final contention centers around the testimony of a Commonwealth witness, one Cartia.

According to the Appeals Court, Carita testified that he had been incarcerated at the Suffolk County Jail on a charge of first degree murder when he learned that petitioner had been placed in the same institution on charges stemming from his altercation with Abboud. [1974] Mass.App.Adv.Sh. at 876–77, 316 N.E.2d at 746. Carita was a friend of the petitioner and, upon visiting the latter's cell, the petitioner supposedly told Carita that he had tried to shoot Abboud, that Abboud had escaped at that time and that he was now confined at the same institution. The petitioner supposedly requested that Carita seek out Abboud and "persuade" him not to testify against petitioner. Shortly thereafter, Carita pleaded guilty to a lesser charge of manslaughter and was serving a sentence on that charge when he testified at petitioner's trial.

The petitioner claims that the trial judge erred in refusing to allow his counsel to ask Carita if he had been under indictment for first degree murder at the time he spoke with the petitioner, rather than the lesser included offense to which he eventually pled.

■■■■■ It is well established that the right to cross-examine witnesses is fundamental to a fair trial. *See Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The defense is entitled to cross-examine a witness to impeach his credibility and to show bias or prejudice which may have influenced a witness's testimony, *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), particularly when that bias may have resulted from promises or inducements by the government. *Alford v. United States,* 282 U.S. 687, 693, 51 S.Ct. 77, 75 L.Ed. 736 (1931). Concomitantly, it is within the sound discretion of the trial judge to limit cross-examination by exercising reasonable judgment as to when a subject has been exhausted. *Id.* at 694, 51 S.Ct. 77. The test in a federal proceeding is whether

> the jury was otherwise in possession of sufficient information concerning formative events to make a "discriminating appraisal" of a witness' motives and bias.

*United States v. Campbell,* 426 F.2d 547, 550 (2d Cir. 1970). *See United States v. Blackwood,* 456 F.2d 526, 530 (2d Cir. 1972), *cert. denied,* 409 U.S. 863, 93 S.Ct. 154, 34 L.Ed.2d 110 (1973).

■■■■ Here there was no abuse of discretion and, therefore, no unconstitutional limitation placed on petitioner's right of cross-examination.

The record demonstrates that petitioner's trial counsel had more than ample opportunity to explore the area of any inducements that might have been offered to Carita by the Commonwealth in return for his testimony against Flemmi. With regard to the specific exclusion of evidence of the first degree murder charge against Carita, complained of in this petition, the Appeals Court found:

> The defendant's counsel was permitted to cross-examine Carita at length as to

his motives for entering the guilty plea, as to how he had communicated his intention to do so to the authorities, and as to the details of his conversations with the authorities and with his own attorney on those subjects.

*Commonwealth v. Flemmi,* [1974] Mass. App.Adv.Sh. 78–79, 316 N.E.2d at 747.

Clearly, there was sufficient evidence presented to the jury to enable it to make a "discriminating appraisal" of whether or not Carita's manslaughter plea in the unrelated case tainted his testimony against petitioner, and, if so, whether that affected Carita's credibility. This was not a case where "[o]n the basis of the limited cross-examination that was permitted, the jury might well have thought that defense counsel was engaged in a speculative and baseless line of attack on the credibility of an apparently blameless witness . . . ." *Davis v. Alaska, supra,* 415 U.S. at 318, 94 S.Ct. at 1111. The jury knew that Carita was serving a sentence for manslaughter at the time of his testimony against petitioner. It knew that he had hoped for consideration from the courts after his decision to testify against the co-defendant at his own trial. Whether or not the jury drew an inference that Carita was allowed to plead guilty to a lesser charge is unclear. In any event, it was certainly obvious from the Appeals Court's description of the testimony that there were many ways in which the Commonwealth could have exerted influence over Carita, directly or indirectly, to convince him to testify at petitioner's trial. Thus, while evidence of the original charge may well have been relevant to the issue of Carita's credibility, it was, at most, cumulative. By excluding it,

the trial judge did nothing more than exercise his traditional discretion to weigh the probative value of the additional evidence against the twin dangers of unfair prejudice and unnecessary delay in the proceedings. Given the wide latitude which the trial judge already accorded counsel to explore the subject, this court cannot say that his discretion was abused.

Accordingly, the petitioner's request for a writ of habeas corpus must be denied.

## ON MOTION FOR RECONSIDERATION

On January 19, 1976, this court entered an order dismissing the petitioner's request for a writ of habeas corpus. On January 22, 1976, the petitioner filed a motion for reconsideration, arguing that this court erred in various aspects of its original ruling. After hearing, and upon careful review of the contentions raised by the petitioner, the motion for reconsideration is denied.

The central issue raised by this motion is whether a memorandum and tape recording relating to a telephone conversation between the petitioner and the Commonwealth's key witness against him, one Richard Abboud, were exculpatory and, therefore, should have been provided him under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The petitioner argues that this court in denying his request for writ of habeas corpus: (1) wrongly "placed the burden of proving the contents" of the memorandum and tape on the petitioner; (2) failed to make its own determination of whether the materials were exculpatory; and (3) applied the "wrong standard" in determining whether the materials were exculpatory.[1]

---

1. Petitioner claims the court was side-tracked in considering the memorandum and tape separately, rather than as one piece of evidence. Although such an approach may well have made this court's job a bit easier, the parties did treat the memorandum and tape as two pieces of evidence and raised somewhat different issues with regard to each.

Petitioner also finds error in this court's conclusion that the memorandum, as opposed to

the tape, was not properly requested. That conclusion, of course, had been made solely on the issues of whether there had been a "refusal" by the Commonwealth to provide the memorandum at trial which had impinged upon the petitioner's right to cross-examine Abboud. A request for the document was not needed to preserve a defendant's rights under *Brady.*

## I

The initial claim of error relates to the somewhat unusual technical problems faced by the court in determining whether the memorandum and tape were exculpatory. First, there was, and is, some confusion as to its contents since the document was apparently lost some time after the petitioner's trial and never recovered. Second, the allegedly exculpatory portion of the tape was somehow erased prior to trial. Both the memorandum and the tape were under the custody and control of the Commonwealth.

At no time did the petitioner claim that these circumstances involving the memorandum and tape were the result of intentional misconduct by the Commonwealth. But, the petitioner has maintained that the Commonwealth was "negligent" in the manner in which it stored the evidence and, as a result, has the burden of proving that the memorandum and tape were not exculpatory. Under petitioner's theory, a failure by the Commonwealth to meet that burden would mandate a finding that the materials were exculpatory and, therefore, should have been provided under *Brady.*

Whatever merit such an argument might have in another situation, it has no application to the facts of this case. The memorandum had been lost by the time the petitioner had made his second motion for a new trial. Accordingly, the parties then stipulated: (1) that the memorandum was a "substantially accurate account" of the recorded conversation; and (2) that the "highly exculpatory" portion of the memorandum included Flemmi's question to Abboud: "Why did you shoot me?" Because the parties could not agree on the context of that statement, particularly Abboud's response, the motion judge took testimony on that question. After a full hearing he concluded that Abboud responded "Why did I try to shoot you? You tried to shoot me." This finding of fact was affirmed by the Appeals Court. [1974] Mass.App.Adv.Sh. 867, 875, 316 N.E.2d 740, 745.

It was on this particular issue, and on this particular issue alone, that this court gave presumptive weight to the findings of the state court. A factual finding made by a state court which is reviewing a defendant's criminal conviction, "shall be presumed to be correct" when that defendant later challenges that conviction in a federal habeas proceeding. 28 U.S.C. § 2254(d). The presumption is rebuttable and may be overcome where, generally speaking, the integrity of the state's fact-finding process is open to question or the state court making the determination lacked subject-matter or personal jurisdiction. *Id.; Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

The petitioner has not provided any basis to question the integrity of the state's fact-finding process or its jurisdiction. Nor has he provided any legal argument for not applying the § 2254 presumption in this situation. And, of at least equal significance, he has not attempted to offer any evidence which would contradict the state courts' findings as to the contents of the memorandum. Under these circumstances, the court must accept the facts as found by the state.

Also to be borne in mind is the parties' stipulation that the memorandum represented a "substantially accurate account" of the conversation between Abboud and Flemmi. The state courts' findings as to the contents of the memorandum, therefore, must also be applied to "fill in" that portion of the tape which had been erased.

## II

The acceptance by this court of the state courts' factual determinations with respect to what the missing memorandum and missing portion of the tape contained, does not impose any obligation on this court to accept the legal conclusions of the state courts as to whether the materials were exculpatory. The question of what constitutes exculpatory evidence is a mixed question of law and fact which demands plenary

consideration by a federal court on a petition for habeas corpus. *Davis v. Heyd,* 479 F.2d 446 (5th Cir. 1973). Such consideration was the basis for this court's holding in its January 19th opinion. Simply stated, petitioner is mistaken in his claim that this court merely adopted the legal conclusion of the state courts on whether the memorandum and tape were exculpatory. It should be unnecessary to point out that findings of fact and conclusions of law are distinct categories.

■■■■ Petitioner's claim that this court applied the wrong standard in determining whether the memorandum and tape were exculpatory in similarly without merit.[2] Implicit in any conclusion that material is not exculpatory under *Brady* is the determination that the evidence was either not favorable to the defense or not material to the issues of guilt or punishment. *Woodcock v. Amaral,* 511 F.2d 985 (1st Cir. 1974). Moreover, in determining what may be favorable or material, the court must consider whether the material, as amplified, could have been developed by skilled counsel so as to induce reasonable doubt in the minds of enough jurors to avoid a conviction. *United States v. Miller,* 411 F.2d 825, 832 (2d Cir. 1969).[3]

Again, this is precisely, albeit cryptically, the standard this court used in considering whether the materials were exculpatory. Of course, in considering the issue the court not only examined Flemmi's statement "Why did you shoot me?" but also Abboud's immediate response "Why did I shoot you? You tried to shoot me." as well as the entire unerased portion of the tape as played back in open court.

At no time during the conversation does Flemmi challenge Abboud's assertion "Why did I shoot you? You tried to

shoot me." Nor did the conversation challenge the scenario offered by the Commonwealth. Flemmi did not deny that he talked Abboud into going for a ride; that he sat behind Abboud in the car with a concealed and loaded weapon; or that he pulled out the weapon as he and Abboud were speaking. Moreover, the details of the incident brought out during the conversation—that Abboud had been afraid of Flemmi and that there might be a police "tail" following the car—had all been explored by defense counsel during his cross-examination of Abboud.

■■■ On the entire record, this court concluded, and still concludes, that there was no basis on which a reasonable jury could find the excluded evidence favorable to the defendant. Nor would its introduction likely have affected the outcome of his trial. *Woodcock v. Amaral, supra,* 511 F.2d at 991.

### III

On February 12, 1976, the petitioner amended his motion for reconsideration by raising two additional points. Neither is meritorious.

■■■ Petitioner's first additional theory is that the memorandum and tape were exculpatory because they could have been used to impeach Abboud's credibility after Abboud denied on the stand that Flemmi had even asked him "Why did you shoot me?" *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1974). Although the material might well have been relevant for such a purpose, this court cannot say, under the circumstances of this case, that the petitioner was deprived of his constitutional rights by not having access to it. Flemmi's counsel devoted much of his cross-examination to an at-

---

**2.** Petitioner does not make clear how the court could simultaneously fail to consider for itself whether material was exculpatory, and then apply the wrong definition of exculpatory evidence in evaluating the material in question. Presumably, these are alternative claims of error.

**3.** This court, of course, has in mind that one juror persisting in a vote for acquittal would cause a hung jury. *See United States v. Miller, supra,* 411 F.2d at 832 n. 14.

tack on Abboud's credibility. He brought out inconsistencies between Abboud's direct testimony and statements he had earlier made to the grand jury. He inquired about an admittedly false account of the incident which Abboud had given to bystanders shortly after Flemmi had been shot. And he had Abboud relate his not insubstantial criminal record, involving several crimes of violence. Under these circumstances, this court cannot say that had the evidence been available to impeach Abboud, its use for that purpose would have created a reasonable possibility of a different result. *Woodcock v. Amaral, supra,* 511 F.2d at 991.

Petitioner's final claim that Abboud's denial that Flemmi had asked "Why did you shoot me?" was perjurious and the Commonwealth's failure to correct it deprived him of due process, is similarly without merit. *See Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). There is no indication that Abboud had lied on the stand, only that he did not hear or remember what counsel for Flemmi and the Commonwealth later stipulated Flemmi had said. Innocent misrecollections by witnesses are not uncommon occurrences. There is no evidence in the record that Abboud's conduct at trial was anything more.

The motion for reconsideration is denied.