Arthur SPINNEY, Plaintiff
vs.
COMMONWEALTH OF
MASSACHUSETTS
Defendant

No. 80-1021-S

United States District Court
Commonwealth of Massachusetts

October 1, 1982

**Daniel Kelleher, Esq.,** counsel for plaintiff
**Alexander G. Gray, Esq.,** counsel for defendant

**MEMORANDUM AND ORDER**
**Skinner, D.J.** Petitioner alleges that he

was denied his right to a fair trial before an impartial jury as guaranteed by the Sixth and Fourteenth Amendments to the Constitution. He contends that there was an extraneous influence on the jury and that the presiding judge did nothing to mitigate its prejudicial impact.

The alleged extraneous influence consisted of an article that appeared on the front page of the Boston Globe on May 18, 1974, the Saturday immediately prior to the petitioner's trial. The article was headlined, "Judge chastises jury for rape acquittal" and reported the presiding judge's dismissal of a jury that had returned a verdict of not guilty in a rape trial the day before. The article stated that a justice of the Superior Court had "delivered from the bench a scathing denunciation of the attitude of jurors toward rape victims". It further indicated that the trial had turned upon whether the jury accepted the defendant's claim that the victim had consented, or the testimony of the victim and another witness that she had been attacked and had screamed for twenty minutes. According to the newspaper account, the judge said that the evidence was misconstrued by the jury and was overwhelmingly against the defendant.

Three days after the publication of the article, petitioner Spinney went to trial before the same Superior Court justice and was convicted on two indictments for assault with intent to rape a female child and three indictments for indecent assault and battery on a child under fourteen. He was sentenced to twelve to twenty years on each of the first two indictments and three to five years on the remaining charges, all to be served concurrently. The petitioner did not take a direct appeal of his conviction, but filed a motion for new trial. The motion was denied by the Massachusetts Superior Court on March 15, 1979 and the denial was affirmed by the Massachusetts Appeals Court on October 25, 1979. An application for direct appellate review was denied by the Massachusetts Supreme Judicial Court. In 1981, he filed this amended petition for a writ of habeas corpus.

Petitioner argues that the trial jury was irreparably prejudiced by pretrial publicity of the trial judge's remarks about a similar case. Petitioner alleges and has submitted affidavits to show that neither he nor his trial attorney was aware of the publicity at the time of the trial so could not raise an objection at the trial. He maintains that the trial judge's failure to poll the jurors **sua sponte** or to make any other attempt to mitigate the possibility of prejudice amounted to violation of his right to due process.

In order for pretrial publicity to render a trial constitutionally infirm, the trial must be "utterly corrupted" by the media coverage. **Dobbert v. Florida,** 432 U.S. 282, 303 (1977) quoting **Murphy v. Florida,** 421 U.S. 794 (1975). Even when jurors are exposed to potentially prejudicial publicity about a defendant before or during his trial, the conviction must stand unless the publicity "was so prejudicial that exposure would irremediably have caused a loss of the requisite neutrality and detachment". **McLaughlin v. Vinzant,** 522 F.2d 448, 452-453 (1st Cir. 1975), **cert. den.** 423 U.S. 1037 (1975). This very strict standard has been met only in extreme cases of inflammatory publicity. **Id.** at 453. **See also Mayola v. Alabama,** 623 F.2d 992 (5th Cir. 1980), **cert. den.** 451 U.S. 913 (1981); **United States ex rel Greene v. New Jersey,** 519 F.2d 1356 (3rd Cir. 1975).

Spinney's case differs from most pretrial publicity cases because the publicity at issue does not specifically relate to him. **See, e.g., Dobbert v. Florida, supra, United States v. Garza,** 664 F.2d 135 (7th Cir. 1981), **cert. den.** U.S., 102 S. Ct. 1620 (1982), **McLaughlin v. Vinzant, supra.** His situation is in one respect more troublesome than the typical pretrial publicity case because the statements quoted by the press were made by the same judge who presided at petitioner's trial. Comments by a judge, in or outside of the courtroom, are likely to be given great deference by jurors. **Cf. Quercia v. United States,** 289 U.S. 466,

470 (1933), **Hanscomb v. Meachum,** 435 F. Supp. 1162, 1166 (D.Mass. 1977). Where the comments quoted in the press are made by the presiding judge, and where they concern the duty of jurors in the same type of criminal case as the one on trial, the potential for prejudice certainly exists. One might expect the trial jurors to be reluctant to expose themselves to similar public criticism.

In **Hanscomb v. Meachum,** 435 F. Supp. 1162 (D.Mass. 1977), the court denied a habeas corpus petition based on a claim of prejudicial pretrial publicity stemming from the same newspaper article at issue in this case because the trial judge had taken the appropriate steps to mitigate the article's prejudicial effect. The Court articulated the precautions which should be taken by a trial judge when jurors may have been exposed to prejudicial publicity.

> The first obligation of a trial judge when advised that the jurors may have been exposed to prejudicial publicity is to conduct a voir dire to determine whether they were in fact exposed to and affected by the publicity . . . Such jurors who respond affirmatively must then be examined individually and outside the presence of the other jurors, to determine the effect of the publicity . . . There should be a two-step inquiry, the first to disclose the degree of exposure and then to determine the existence of prejudice. **Id.** at 1166-1167.

The trial judge in this case did none of the above.

The **voir dire** of individual jurors is now required by the First Circuit Court of Appeals of its own judges after prejudicial publicity. This rule stems from the court's supervisory power and has not been held to be required by the Constitution. **United States v. Perrotta,** 553 F.2d 247, 249-250 n.5 (1st Cir. 1977); **McLaughlin v. Vinzant, supra,** at 435 n.5. "(N)ot every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a 'failure to observe that fundamental fairness essential to the very concept of justice.' " **Donnelly v. DeChristoforo,** 416 U.S. 637, 642 (1974) quoting **Lisenba v. California,** 314 U.S. 219, 236 (1941). **See also Martin v. Warden, Huntington State Correctional Institution,** 653 F.2d 799 (3rd Cir. 1981) **cert. den.,** U.S., 102 S.Ct. 1019 (1982).

I am of the opinion that the severity of the likely impact of the publicity in this case is so great that the judge's conduct constitutes error of constitutional proportions.

It does not follow, however, that the writ should issue, because the error in this case was mitigated by two factors. First, the judge gave clear and thorough instructions to the jury regarding the Commonwealth's burden of proof, the meaning of reasonable doubt, the presumption of innocence and the jury's duty to decide the case based solely on the evidence introduced at trial. Second, the evidence against petitioner was overwhelming on at least one count of assault with intent to rape.

After a careful review of the trial transcript, I conclude that it is beyond a reasonable doubt that a jury would have found petitioner guilty of at least one charge, assault with intent to rape Denise Gordon, regardless of the influence of the newspaper article. Her testimony was detailed, specific and fully corroborated by that of Barbara Fraser. While much of the testimony by the other witnesses was confused and unsupported, especially pertaining to the charges of indecent assault and battery, Gordon's account of the assault with intent to rape provided overwhelming and uncontradicted evidence of guilt. Her general credibility was not substantially impeached.

Petitioner's conviction on at least this one assault with intent to rape indictment must still stand. Where constitutional error exists, it may be held harmless if a court finds it harmless beyond a reasonable doubt. **Wainwright v. Sykes,**

433 U.S. 72 (1977) (White, J. concurring), **Harrington v. California,** 395 U.S. 250 (1969), **Chapman v. California,** 386 U.S. 18 (1967), **Grieco v. Meachum,** 533 F.2d 713 (1st Cir. 1976), **cert. den.** 429 U.S. 858 (1976). This finding may be based on the overwhelming nature of the case against the defendant. **Harrington v. California, supra. See also, Subilosky v. Callahan,** No. 82-1005, slip op. at 4 n.2 (1st Cir., Sept. 24, 1982). Although the present case is more troublesome than the situation presented in **Hanscomb, supra,** I conclude that ''the totality of circumstances demonstrate that petitioner had a fundamentally fair, if not perfect, trial''. 435 F. Supp. at 1168 quoting **Murphy v. Florida,** 421 U.S. 794 (1975).

Petitioner received a sentence of twelve to twenty years on each count of assault with intent to rape a female child and three to five years on each count of indecent assault and battery on a child under fourteen. All of these sentences were to run concurrently. Where concurrent sentences are imposed, a valid conviction on any of the counts renders the imprisonment valid for the duration of the sentence legitimately imposed. **Hirabayashi v. United States,** 320 U.S. 81, 85 (1943); **United States v. Gordon,** 634 F.2d 639, 643 (1st Cir. 1980)[1] fact that the evidence was considerably less than overwhelming as to the other charges accordingly does not affect the result. The petition for habeas corpus relief should therefore be DISMISSED on the merits.

So ordered.

**Walter Jay Skinner**

[1] In **Benton v. Maryland,** 394 U.S. 784, 789-91 (1969), the Supreme Court held that there was jurisdiction to consider an allegedly unconstitutional conviction even though a sentence had been imposed which ran concurrently with the sentence on a concededly valid conviction. The case arose on certiorari to the Maryland Court of Special Appeals, which had in fact ruled on the challenged conviction. The Court said that it would consider the challenged count since the state apparently still considered it important. It is not clear that the state court had any concurrent sentence rule. (The Court clearly welcomed a chance to overrule **Palko v. Connecticut,** 302 U.S. 319, 395 U.S. at 794-5.)

In a petition in federal court for writ of habeas corpus, the basic question is whether the petitioner is to be set free because of deprivation of a fundamental constitutional right. It is a more appropriate setting for the application of the concurrent sentence rule than any form of appeal. If there is a proper basis for his continued incarceration, the writ should not issue.