**Tam S. BUI, Petitioner,**

v.

**Paul DiPAOLO, Superintendent of the Massachusetts Correctional Institution at Norfolk, and Scott Harshbarger, Attorney General of the Commonwealth, Respondents.**

**No. CIV. A. 96–12615–RCL.**

United States District Court,
D. Massachusetts.

Dec. 23, 1997.

---

Wendy Sibbison, Greenfield, MA, for Tam S. Bui.

William J. Duensing, Attorney General's Office, Boston, MA, for Paul Dipaolo, Scott Harshbarger.

### MEMORANDUM AND ORDER

YOUNG, District Judge.

Tam S. Bui ("Bui") petitions this Court for *habeas corpus* relief pursuant to 28 U.S.C. § 2254. Bui asserts that his convictions in state court upon two counts of first degree murder and one count of armed robbery were constitutionally defective due to violations of his 1) rights under the Confrontation Clause to cross-examine witnesses against him, 2) Sixth Amendment right to counsel, 3) Fifth Amendment privilege against self-incrimination, 4) due process rights stemming from prosecutorial misconduct during closing argument, and 5) Fourth Amendment right to be free from illegal searches and seizures.

## I. FACTUAL BACKGROUND

With appropriate deference to the fact-finding role of the courts of the Commonwealth, *see* 28 U.S.C. § 2254(e)(1), the following facts may be gleaned from the record of this case:

On November 25, 1989, Ngoc Le and her fifteen year-old daughter, Dixie Poulin, were found stabbed to death in their basement apartment in Everett, Massachusetts. There was evidence that the younger victim had also received blunt force injuries, allegedly caused by a gun. Both cash and jewelry were missing from the apartment. *See Commonwealth v. Bui,* 419 Mass. 392, 393, 645 N.E.2d 689 (1995), *cert. denied* sub nom.

*Bui v. Massachusetts,* 516 U.S. 861, 116 S.Ct. 170, 133 L.Ed.2d 111 (1995).

In the summer of 1990, the police received information that led to the arrest of Bui and two others.[1] Specifically, Thinh Trinh ("Thinh"), who knew both Ngoc Le and Bui, said that Bui had told him that he used a gun at the victims' apartment around the time of the murders. Findings of Fact, Rulings of Law and Order on Defendant's Motion to Suppress Evidence at ¶ 2, *Commonwealth v. Bui,* No. 90–2753–56 (Middlesex Super. Ct. Mar. 24, 1992) (Supp. Answer, Ex. A–2, page 204) ("Findings and Rulings"). Furthermore, Thinh's "common law wife," [2] Linh Nguyen ("Linh"), told police that Bui admitted to her that he "participated in the robbery and murders in Everett in November of 1989." *Id.* at ¶ 3. Linh also produced two of the pieces of jewelry that had been stolen from Ngoc Le's apartment, a jade bracelet and a jade Buddha, and said that Bui and Hung Truong had given them to her. Trial Tr. at 9–118 to 9–123, 11–79 to 11–84.

On August 17, 1990, the police obtained arrest warrants for Bui and two other men in connection with the murders. Findings and Rulings at ¶ 4. Told that Bui could be found at his parents' apartment, the police went there. *Id.* at ¶ 3. Once inside, they performed a protective sweep and discovered a .38 caliber hand gun consistent with the object that caused the blunt force trauma to Dixie Poulin. *Id.* at ¶ 9; *Bui,* 419 Mass. at 395–96, 645 N.E.2d 689. Bui's father identified the gun as belonging to Bui. Findings and Rulings at ¶ 14.

In April 1992, Bui was convicted of two counts of first degree murder and one count of armed robbery after a jury trial before the Superior Court sitting in and for the County of Middlesex (Lauriat, J.).[3] On direct review, the Supreme Judicial Court affirmed Bui's convictions. *Commonwealth v. Bui,* 419 Mass. 392, 645 N.E.2d 689 (1995). Bui then filed this *habeas corpus* petition pursuant to 28 U.S.C. § 2254.[4]

## II. STANDARD OF REVIEW

Bui filed this petition on December 27, 1996—after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214—and is therefore subject to the amendments to 28 U.S.C. § 2254 contained therein. *See Lindh v. Murphy,* —— U.S. ——, ——, 117 S.Ct. 2059, 2068, 138 L.Ed.2d 481 (1997). As amended, section 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(e)(1) further states:

In a proceeding instituted by an application for a writ of habeas corpus ..., a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

## III. ANALYSIS

### A. *Right to Confront Witnesses*

Bui first argues that the trial court violated his rights under the Confrontation Clause

---

1. Long Phan and Hung Truong.

2. Thinh and Linh are not legally married but were officially married by Vietnamese custom. Trial Tr. at 9–107—9–108.

3. With respect to the two other men who were arrested along with Bui, one pleaded guilty to two counts of second degree murder and one count of armed robbery. The Commonwealth apparently never charged the second man with murder, and the unarmed robbery charge brought against him was ultimately dismissed. *Bui,* 419 Mass. at 393 n. 1, 645 N.E.2d 689.

4. This Court heard oral arguments concerning the Commonwealth's motion to dismiss Bui's petition on July 9, 1997.

of the Sixth Amendment by preventing him from cross-examining Linh and Thinh with respect to their motive to lie. As the Supreme Judicial Court noted on direct review, both Linh and Thinh were "very important" witnesses for the prosecution:

[Linh] testified that [Bui] admitted to her that he and another man had killed the victims and that he had used a knife to kill people. She also testified that the defendant and the other man had given her jewelry which, the jury could have found, had been taken from the victims' apartment . . . .

[Thinh] testified that when [Bui] saw Linh Nguyen's mother wearing a necklace taken in the robbery, [Bui] told Thinh Trinh not to let her wear it "around here." Thinh Trinh testified further that [Bui] had told him that he had stabbed the older victim in the chest, had shown him a knife and said, "This is the knife that kill," and had shown him a gun similar to one in evidence, as to which . . . there was testimony connecting such a gun with impressions on the skull of the younger victim.

*Bui*, 419 Mass. at 398–99, 645 N.E.2d 689.

During the cross-examinations of Linh and Thinh, Bui's defense counsel, Thomas Hoopes, Esq., sought to establish 1) that Bui, Thinh, Linh, and Linh's father, Mong Nguyen ("Mong"), were together in California before the murders had taken place, 2) that Mong, in the presence of several other high level figures in Vietnamese organized crime, asked Bui to transport drugs to Massachusetts, and 3) that Bui refused Mong's request. The defense theory of the case was that Mong ordered Thinh and Linh to fabricate evidence against Bui to frame him for the murders in retaliation for the embarrassment that Mong suffered after Bui's public refusal of his request to act as a drug courier for him. Trial Tr., at 10–68 (sidebar conference).

■ Defense counsel first explored this theory during the cross examination of Linh,

asking her whether her father, Mong, ever visited her in California while she was there with Thinh and Bui. When Linh answered that she did not remember, Trial Tr. at 10–66, defense counsel requested a sidebar, explained to the judge the defense theory of the case, and asked permission further to inquire whether Mong asked Bui to transport drugs.

THE COURT: And what you are going to ask this witness is what? One, whether he ever went out there—

MR. HOOPES: Mong Nguyen.

THE COURT:—and she said she doesn't remember.

MR. HOOPES: At this point.

THE COURT: And what are you going to do to make her remember?

MR. HOOPES: I'm going to ask her again, wasn't her father out there. If she says, "yes," fine; **if she says she doesn't remember, that's the end of it.**

Trial Tr. 10–68 to 10–69 (emphasis added). The judge then held a voir dire hearing and permitted defense counsel to ask Linh whether her father was present in California. When she reiterated that she did not remember, defense counsel, as promised, dropped this line of inquiry, except to request that the witness be permitted to tell the jury her present state of memory—a request which the trial court promptly denied. Trial Tr. 10–73 to 10–75.

■ This Court holds that Bui's rights under the Confrontation Clause were not violated with respect to the cross-examination of Linh. The trial justice permitted defense counsel fully to explore its theory of bias with respect to this witness; in fact, it was counsel, and not the court, who made the decision to cease questioning on the issue after Linh steadfastly responded that she did not remember whether her father was present in California. As defense counsel stated at the sidebar, "if she says she doesn't remember, that's the end of it." Trial Tr. at 10–69.[5]

---

5. Bui also asserts that the refusal of the trial justice to allow Linh to describe her lack of memory in front of the jury violated Bui's rights under the Confrontation Clause. A review of the

trial transcript, however, indicates that Linh did testify in front of the jury as to her lack of memory on this issue—the first time she was asked by defense counsel. *See* Trial Tr. at 10–66.

With respect to the cross-examination of Thinh, however, the analysis is far more complex. While Thinh was on the stand, defense counsel again sought to pursue its theory that the testimony given by Thinh and Linh was a "retribution-motivated fabrication" ordered by Mong. *Bui*, 419 Mass. at 400, 645 N.E.2d 689. After the prosecution objected, the trial justice called the attorneys to the sidebar:

THE COURT: What's the relevance?

MR. HOOPES: The relevance again, Your Honor, is if this witness says, "yes," and if he says that my client declined [to transport drugs for Mong], then there is a bias and a prejudice that I can argue to the jury as to why this is being set up.

THE COURT: Why is there a bias or a prejudice?

MR. HOOPES: Because if my client said, "no," and Mong Nguyen was present, this is Mong's way of paying back.

MS. MERACHNIK [prosecutor]: There's ... been no evidence of that.... I suggest there's no foundation, there's no basis for him to ask these questions at this point in the proceedings.

THE COURT: Well, I will assume a good-faith basis for asking the questions, but I will **rule them inadmissible on the grounds of relevance**.... And you've made an offer of proof, I'll consider what you anticipated the witness saying an offer of proof, but I don't see it being tied to this case.

MR. HOOPES: ... So the offer of proof is not in question at this point, okay.

THE COURT: No. You've made an offer.... [Y]ou just told me what you anticipate the witness would say ... [a]nd that it goes to motive, it goes to bias of this witness.

MR. HOOPES: While we're at sidebar, may I be permitted to ask the witness whether Mong Nguyen was present at any time? ...

THE COURT: You may have that question ... [Y]ou may ask if, at some point in some conversation [in California], Mong

Nguyen was present. But that's where it stops.

Trial Tr. at 12–51 to 12–53 (emphasis added).

Upon the conclusion of this sidebar conference, defense counsel asked Thinh whether Mong Nguyen was present at any time while Thinh was in California with Bui. Thinh answered "yes." After requesting another sidebar, defense counsel restated his desire to ask the next question: Did Mong ask Bui to transport drugs to Boston; and did Bui refuse? The Court again denied defense counsel's request on the basis of relevance, and prohibited any further questions on this issue. Trial Tr. 12–54 to 12–55.

■ On direct review, the Supreme Judicial Court held that Bui failed to preserve his rights on this issue because he did not request a voir dire of Thinh. *Bui*, 419 Mass. at 401–02, 645 N.E.2d 689 (explaining that Bui's "bias theory was too speculative to rest simply on counsel's offer of proof"). This Court respectfully but strongly disagrees. An examination of the trial transcript indicates that the trial justice unambiguously stated that he **accepted** counsel's offer of proof as accurate, but simply did not see the relevance of this line of questioning. Trial Tr. at 12–52, 12–55. As a request for a voir dire would have been futile in these circumstances, this Court holds that Bui did not procedurally default this argument, and now turns to the merits of his claim. *See Osborne v. Ohio*, 495 U.S. 103, 124–25, 110 S.Ct. 1691, 1703–04, 109 L.Ed.2d 98 (1990).

It is well established that the "Sixth Amendment right of a criminal defendant 'to be confronted with the witnesses against him' includes the right to impeach credibility through cross-examination." *United States v. Tracey*, 675 F.2d 433, 437 (1st Cir.1982) (citing *Davis v. Alaska*, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1109–10, 39 L.Ed.2d 347 (1974)). "Moreover, because bias is 'always relevant as discrediting the witness and affecting the weight of his testimony,' a defendant is entitled to explore a witness' motivation for testifying." *United States v. Lynn*, 856 F.2d 430, 432 (1st Cir.1988) (quoting

As Linh had given the same answer earlier, it is difficult to see how the refusal of the trial justice

to put such testimony before the jury for a second time in any way prejudiced Bui.

*Davis,* 415 U.S. at 316, 94 S.Ct. at 1110) (other citations omitted) (footnote omitted). Although a "trial judge[] possess[es] the discretion to limit or even totally prohibit cross-examination into certain areas," such discretion " 'becomes operative only after the constitutionally required threshold level of inquiry has been afforded the defendant.' " *Id.* at 432–33 (quoting *Tracey,* 675 F.2d at 437) (citations omitted). According to the First Circuit,

> [w]hether a trial court has abused its discretion in limiting the cross-examination of a witness for bias depends on whether the jury had sufficient other information before it, without the excluded evidence, to make a discriminating appraisal of the possible biases and motivations of the witnesses.

*Brown v. Powell,* 975 F.2d 1, 5 (1st Cir.1992) (citing *Tracey,* 675 F.2d at 437); *see also United States v. Carty,* 993 F.2d 1005, 1010 (1st Cir.1993).

▮ Bui here contends that the trial court abused its discretion by shutting off all inquiry of Thinh regarding the defense theory of bias before the jury had sufficient information to make a "discriminating appraisal of the possible biases and motivations of the witnesses." *Brown,* 975 F.2d at 5. Indeed, while at the sidebar, defense counsel articulated a seemingly coherent defense theory to the entire case against Bui, and made clear that the purpose of this line of questioning was to demonstrate that the Commonwealth's two most important witnesses—who also happened to be the two people that initially led the police to Bui—had a motive to fabricate evidence against him. Trial Tr. at 12–51 to 12–53. Furthermore, Bui makes

a strong argument that without the testimony of Linh and Thinh, the Commonwealth's evidence against him was insufficient as matter of law.[6]

From **this** Court's perspective, after Thinh testified that Mong was indeed present in California, the more prudent approach would have been for the trial justice to permit counsel to ask the next question: Did Mong ask Bui to transport drugs to California? Nevertheless, the First Circuit's interpretation of the Confrontation Clause has long recognized that a trial judge **always** retains the discretion to disallow questions pertaining to bias when "[t]he very slight probative value of such evidence on the issue of bias does not overcome the strong likelihood of confusion on the central issues in the case and undue delay in the trial." *United States v. Jarabek,* 726 F.2d 889, 902 (1st Cir.1984). As the Supreme Judicial Court noted on direct review, here, even if Bui had successfully established that Mong had asked Bui to transport drugs and Bui had publicly declined his request, the defense theory further "requires acceptance of the idea, for which no offer of proof was made, that the degree of humiliation and anger was so intense that [Mong] would put his own daughter and son-in-law, the parents of his grandson, in peril by directing them to testify falsely in a case involving murder in the first degree." *Bui,* 419 Mass. at 401, 645 N.E.2d 689. While it is difficult for this Court to see how permitting Bui's defense counsel to ask a few more questions regarding the events in California would have wrought undue confusion upon the jury, this Court, unlike the Superior Court, did not have the opportunity to ob-

**6.** The Commonwealth's only other evidence against Bui was 1) the testimony of Thinh's mistress, Thuy Le 2) the gun found in Bui's parents' apartment, and 3) Bui's statements to the police. Although Thuy Le testified that Bui showed her a knife which he had used to kill people, unlike Linh and Thinh, she did not offer any evidence directly implicating Bui in the murders. Trial Tr. at 10–112 to 10–122. Furthermore, Bui argues that Thuy Le's credibility was undercut by her testimony that Thinh used to beat her, *see* Trial Tr. 11–43, creating a reasonable inference that she followed Thinh's orders to manufacture evidence against Bui out of fear of retribution by Thinh. With respect to the gun, although the

jury could have concluded that it matched the shape of three of the wounds on the younger victim's head, the Commonwealth conceded that this gun is a widely available model, thus making it impossible to tie this particular gun to the wounds. Finally, Bui's statements to the police:

> contained only braggadocio ("You have nothing"), a single contradiction about whether or not he knew [the older victim] Ngoc, an admission that the gun [found in his parents' apartment] ... was his, and statements of faith in the Constitution, none of which [without the testimony of Linh and Thinh] was sufficient for a conviction.

Bui Mem. at 18.

serve all of the evidence firsthand. Thus, although it is a close call, this Court cannot say that the decision of the trial justice to curtail Bui's cross examination of Thinh constituted a violation of "clearly established Federal law." 28 U.S.C. § 2254(d)(1).

## B. *Right to Counsel*

■ Bui next claims that during his interrogation at police headquarters, after receiving his *Miranda* warnings, he expressly requested the presence of an attorney, but the police continued to question him, in violation of *Miranda v. Arizona,* 384 U.S. 436, 475–76, 86 S.Ct. 1602, 1628–29, 16 L.Ed.2d 694 (1966) and *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981). In ruling upon Bui's pre-trial motion to suppress, however, the Superior Court justice made a factual determination that Bui never requested counsel:

> Bui testified that he requested counsel during Walsh's interview. Neither [Officers] Walsh nor Doan testified that Bui requested counsel prior to the conclusion of that interview. This Court does not credit Bui's testimony on this issue . . . .

Findings of Fact, Rulings of Law and Order on Defendant's Motion to Suppress Statements at 10, *Commonwealth v. Bui,* No. 90–2753–56 (Middlesex Super. Ct. Apr. 13, 1992) (Supp.Answer, Ex. A2). On direct review, the Supreme Judicial Court affirmed this factual finding, holding that "the judge was warranted in finding that [Bui] did not ask for a lawyer." *Bui,* 419 Mass. at 397, 645 N.E.2d 689.

■ Under 28 U.S.C. § 2254(e), a determination of fact made by a state court is presumptively correct and the *habeas* petitioner carries the burden of rebutting this presumption by clear and convincing evidence. Here, the only evidence presented by Bui is his own testimony that he requested counsel.

As this is not nearly sufficient, this Court rejects Bui's right to counsel claim.[7]

## C. *Self-Incrimination*

■ Bui also contends that the Superior Court incorrectly concluded that he waived his right to remain silent and admitted some of the statements he made during his short, post-*Miranda* interrogation. After receiving his *Miranda* warnings, Bui "selectively declined to answer some questions and answered others." *Bui,* 419 Mass. at 397, 645 N.E.2d 689. In contrast to Bui's right to counsel claim, here it is essentially undisputed what Bui actually said to the police. Both sides base their argument upon, and the Superior Court appears to have adopted, the police report written shortly after the police interview. According to this report, after the police gave Bui his *Miranda* warnings,

> 1. Bui responded in English that he knew his rights. Bui then stated that his Constitution will protect him and we have nothing . . . .
>
> 2. I asked [Bui] if he had anything to say about what he was being arrested for. Bui responded no, but then added who said I did this?
>
> 3. I then asked him why there was a gun under his bed. He responded that he had it because of what happened to his brother. I asked him what happened to his brother. Mr. Bui responded, you know. When I told him I didn't he stated he got beaten with a bat. It's dangerous out there on the street, but you got nothing, it's not loaded.
>
> 4. This officer then asked if he wanted to know anything, who he killed or anything and he said no. I then asked him if he knew Ngoc Le. Bui said no. I said have you ever been to Everett to Ngoc Le's; also called Tina. Bui said no. Bui then stated he met her once in Dorchester at

---

7. Relying upon *Robinson v. Borg,* 918 F.2d 1387, 1390 (9th Cir.1990), Bui contends that the finding that he did not request an attorney is a mixed question of law and fact, and thus is not subject to the deference required under § 2254(e)(1). In *Robinson,* however, the Ninth Circuit held that the issue of what specific words were uttered during an interrogation is a pure question of fact; it is only the legal significance of these words

that constitutes a question of law. *See id.* Here, the trial justice rejected Bui's testimony that he flat out asked for an attorney. As Bui's other statements during the interview, (e.g. "you have nothing," and "I know my rights. My Constitution will protect me.") cannot reasonably be interpreted as invoking his right to an attorney, his argument is without merit.

Viet house. I asked who else was there and he said just Viet. I asked him if he ever met her daughter Dixie. He responded, Dixie, no.

5. At this point I asked again if Bui had anything to say about what happened around Thanksgiving. Bui stated no and the interview ended.

Defendant's Motion to Supress Statements and Evidence, Report of Trooper Walsh, *Commonwealth v. Bui,* No. 90–2753–56 (Middlesex Super. Ct. Feb. 19, 1991) (Supp.Answer, Ex. A–2, pp. 231–32).

On direct review, the Supreme Judicial Court affirmed the Superior Court's decision to admit Bui's statements from the interrogation, explaining that:

> The [trial] judge concluded that the defendant had an adequate comprehension of English and that he understood his rights when they were given to him both in English and in Vietnamese. The judge was warranted in finding that the defendant was sober, alert, and responsive during the police interview. . . . The judge concluded that, beyond a reasonable doubt, the defendant was adequately advised of his *Miranda* rights, that he knowingly and voluntarily made statements after the waiver. . . . The evidence did not require the judge to find as a fact that the defendant was interrogated after he had asserted his right to remain silent."

*Bui,* 419 Mass. at 397, 645 N.E.2d 689. Bui contends that the state court's determination that the statements he made to police were insufficient to invoke his right to remain silent "was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

In support of this argument, Bui relies upon the First Circuit's decision in *Coppola v. Powell,* 878 F.2d 1562 (1st Cir.1989). In *Coppola,* the Court of Appeals held that the "invocation of the right [to remain silent] must be given a liberal construction. . . . 'Even the most feeble attempt to claim a Fifth Amendment privilege must be recognized.' " *Id.* at 1565 (quoting *United States v. Goodwin,* 470 F.2d 893, 902 (5th Cir.1972))

(other citations omitted). The *Coppola* court further stated that "the invocation of the privilege against self-incrimination does not turn on a person's choice of words." *Id.*

Unfortunately for Bui, however, since *Coppola* the Supreme Court has adopted a far more constrictive standard with respect to the analogous question of a suspect's invocation of his or her right to counsel. In *Davis v. United States,* 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), the Supreme Court held that "the suspect must unambiguously request counsel. . . . Although a suspect need not speak with the discrimination of an Oxford don, he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* at 459, 114 S.Ct. at 2355. "Since the decision in *Davis,* other courts have extended the clear articulation rule to an individual's right to remain silent." *United States v. Andrade,* 925 F.Supp. 71, 79 (D.Mass.1996) (Lindsay, J.) (citing*Coleman v. Singletary,* 30 F.3d 1420, 1424–25 (11th Cir.1994); *Evans v. Demosthenes,* 902 F.Supp. 1253, 1259 & n. 10 [D.Nev.1995]) (other citations omitted). In *Andrade,* Judge Lindsay held that the concerns expressed by the *Davis* court in seeking to craft " 'a bright line that can be applied by officers in the real world of investigation and interrogation without unduly hampering the gathering of information,' " are "no less significant in the case of an invocation of the right to remain silent." *Andrade,* 925 F.Supp. at 79 (quoting *Davis,* 512 U.S. at 457, 114 S.Ct. at 2354; citing *Coleman,* 30 F.3d at 1424). This Court agrees. As Bui failed unambiguously to articulate his desire to exercise his right to remain silent, but rather responded selectively to questions by police, this Court rules that the state court properly admitted his statements from the interrogation.

■ Bui further argues that, at the very least, the trial justice should not have admitted his statement, "I know my rights, my Constitution will protect me." *See Coppola,* 878 F.2d at 1567 ("where a defendant does not testify at trial, it is impermissible to refer to any Fifth Amendment rights that the de-

fendant has exercised"). According to the police report, however, immediately after saying the Constitution would protect him, Bui added, "You have nothing." Report of Trooper Walsh (Supp.Answer, Ex. A–2, p. 231). This Court therefore agrees with the Supreme Judicial Court's conclusion that the admission of this ambiguous statement did not constitute an improper reference to Bui's assertion of his right to remain silent. *See Bui,* 419 Mass. at 397 n. 4, 645 N.E.2d 689.

### D. *Prosecutor's Closing Argument*

 Bui contends that certain statements made by the prosecution during closing arguments violated his due process rights. In particular, Bui argues that the prosecution's 1) repeated references to Bui's statement to the police, "You have nothing," and 2) frequent demands that the jury disregard defense counsel's arguments, and instead "look at Tam Bui," were impermissible comments on Bui's exercise of his right to remain silent, in violation of *Griffin v. California,* 380 U.S. 609, 614–15, 85 S.Ct. 1229, 1232–33, 14 L.Ed.2d 106 (1965).[8] As the Commonwealth points out, however, Bui's statement "You have nothing," was not an invocation of his right to remain silent, but rather an affirmative statement that Bui made to the police **in spite of** his right to remain silent.[9] Furthermore, this Court holds that the state court reasonably could have interpreted the prosecutor's urgings to "look at Tam Bui" as a response to defense counsel's argument that the jury look elsewhere for the perpetrator of the crimes at issue, rather than as a commentary on Bui's decision not to testify.

Bui also asserts that he was denied due process when the prosecution suggested during closing arguments that "defense counsel's

focus on flaws in the Commonwealth's case [and on the Commonwealth's burden of proof] was no more than a reflection of the defendant's own guilty conscience." Bui Mem. at 41. After reviewing the trial transcript, however, this Court notes that no such statement was ever made. This argument is therefore also without merit.

### E. *Unconstitutional Search and Seizure*

 Finally, Bui argues that the trial court violated clearly established federal law, i.e., his Fourth Amendment rights, by refusing to exclude the gun obtained during a protective sweep of his parents' apartment. A federal court, however, may not consider a Fourth Amendment claim on *habeas* review unless the petitioner can demonstrate that he lacked a full and fair opportunity to litigate the issue in state court. *Stone v. Powell,* 428 U.S. 465, 494–95, 96 S.Ct. 3037, 3051–52, 49 L.Ed.2d 1067 (1976); *Tart v. Massachusetts,* 949 F.2d 490, 497 n. 6 (1st Cir.1991).

 Bui contends that *Stone* does not prevent this Court from considering his claim because the Superior Court denied his motion to suppress for lack of standing without first affording him any opportunity to brief or argue the standing issue. The state court's ultimate decision on Bui's motion to suppress, however, depended not upon Bui's lack of standing, but rather the merits of Bui's Fourth Amendment claim. *See Bui,* 419 Mass. at 394–95, 645 N.E.2d 689 ("We shall assume, without deciding, however, that the defendant had standing to challenge the seizure of the gun, and shall conclude that the police were entitled to seize it, based on the facts found by the judge."). As the final decision of the state court rested on an issue that was fully and fairly litigated,[10] the failure of the Superior Court to permit Bui to brief the question of standing does not bring

---

**8.** Although the Commonwealth contends that Bui did not contemporaneously object to the prosecution's use of the statement "You have nothing," Bui points out that the Commonwealth did not raise this argument before the Supreme Judicial Court. Accordingly, this Court bases its ruling on the merits of Bui's claim.

**9.** Bui also claims that the prosecutor's references to the statement, "You have nothing," were improper because the statement itself was inadmissible. As this Court has already held that this

statement was properly admitted because Bui did not unambiguously invoke his right to remain silent during the interrogation, this argument fails.

**10.** Bui had an opportunity to argue both the standing issue and the merits of his Fourth Amendment claim before the Supreme Judicial Court. *See* Appellant's Brief at 49–75, *Commonwealth v. Bui,* SJC No. 06069 (Supp.Answer, Ex. A–1).

Bui's claim out from underneath the *Stone* bar.

 Bui also asserts that his Fourth Amendment claim was not fully and fairly litigated because the Supreme Judicial Court ignored one of his arguments. *See Agee v. White,* 809 F.2d 1487, 1490 (11th Cir.1987). According to Bui, although the Supreme Judicial Court addressed (and rejected) his argument about the permissible scope of a protective sweep by police under *Maryland v. Buie,* 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990), it failed to consider his claim that the police cannot rely on exigency to justify a search for weapons when they had 1) probable cause to believe that weapons would be present, 2) time to obtain a warrant to search for weapons, but 3) only obtained a warrant authorizing them to search the defendant and arrest him. Contrary to Bui's assertions, however, the Supreme Judicial Court did address this argument, holding that "[i]n such circumstances, involving the attempted execution of a warrant to arrest someone for committing two murders and **involving a reasonable belief that weapons might be present on the premises,** the police were entitled to act for their own safety." *Bui,* 419 Mass. at 395, 645 N.E.2d 689 (emphasis added). In making this statement, the court, at least implicitly, rejected Bui's contention that the police's prior knowledge that weapons might be present precluded a legitimate protective sweep. This Court therefore holds that Bui had a full and fair opportunity to litigate every aspect of his Fourth Amendment claim in state court, and is not entitled to collateral review on this issue. *See Stone,* 428 U.S. at 494–95, 96 S.Ct. at 3051–52.

## IV. CONCLUSION

For the foregoing reasons, this Court hereby **DENIES** Bui's petition for *habeas corpus* relief pursuant to 28 U.S.C. § 2254, but issues a Certificate of Appealability, see 1st Circuit Interim Local Rule 22.1(b), solely as to the Confrontation Clause issue as it presents a close question.