**UNITED STATES of America,**

v.

**Lamar THOMAS, Defendant.**

**Criminal No. 06–10039–NMG.**

United States District Court,
D. Massachusetts.

Jan. 11, 2007.

Raymond E. Gillespie, Cambridge, MA, for Defendant.

Thomas E. Kanwit, United States Attorney's Office, Boston, MA, for Plaintiff.

## MEMORANDUM & ORDER

GORTON, District Judge.

The defendant was indicted on two counts of being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) on February 15, 2006. On October 27, 2006, the defendant filed a motion to suppress statements allegedly obtained in violation of his *Miranda* rights. That motion is opposed by the government.

### I. *Background*

The defendant moves to suppress statements he made to police at the Area B–2 police station in Boston, Massachusetts following his arrest on January 24, 2006. According to an affidavit submitted by the defendant, he was arrested and taken to the police station in handcuffs. At the station, he was "chained or secured" by handcuffs either to a wall or a chair in the room. After about one half hour, a police officer came in and allegedly began questioning him, and was soon joined by four other officers. The defendant contends that he was not given any *Miranda* warnings or otherwise advised of his right to remain silent. He declined to have his conversation recorded and admits that he signed a paper to that effect. According to the defendant, he was questioned under pressure for approximately 45 minutes and

then transported to the Area B–2 police station.

An evidentiary hearing on the defendant's motion was held on Monday, January 8, 2007. At that hearing, the government offered three exhibits which were admitted into evidence and the testimony of three witnesses. The witnesses were Boston Police Officers Marc Sullivan and Sergeant Detective Thomas O'Leary, and Massachusetts State Trooper, Jesse Sweet.

## II. *Analysis*

### A. Legal Standard

The government bears the burden of proving, by a preponderance of the evidence, that the defendant made a voluntary waiver of his *Miranda* rights. *Colorado v. Connelly,* 479 U.S. 157, 168, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). Under *Miranda,* if an individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. 384 U.S. 436, 473–74, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Interrogation can be resumed later after a fresh set of *Miranda* warnings so long as the right to cut off questioning was "scrupulously honored." *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).

### B. Findings of Fact

The undisputed facts demonstrate that the police arrested the defendant after observing the erratic operation of a vehicle in which the defendant was a passenger on Intervale Street in the Roxbury section of Boston. When the vehicle approached the proximity of an unmarked Boston police cruiser, the defendant jumped out and fled on foot up Intervale Street and was immediately pursued by three police officers. One of the pursuing officers observed the defendant apparently holding something at his waist band and then discarding an object. When the defendant was appre-hended shortly thereafter, a gun was found nearby and he was placed under arrest. Following his arrest, the defendant was taken to the Youth Violence Strike Force headquarters on Warren Street in Roxbury for questioning. He was detained by the arresting officers for some time without being questioned until Sgt. O'Leary arrived. At that time, Sgt. O'Leary administered *Miranda* warnings to the defendant and, as he explained each warning, asked the defendant if he understood. The defendant responded affirmatively and signed his initials beside each of the warnings on a form and then signed the form indicating that he intended to waive his *Miranda* rights and make a statement without an attorney.

The defendant was questioned about a shooting that had just occurred in the close proximity of Intervale Street. The defendant told the police that he had only been in the neighborhood to purchase crack cocaine, and after consistently repeating that story, the police stopped questioning him about the shooting. Shortly thereafter, the defendant was transported to the Area B–2 station for booking.

At some point before or during the booking process, the defendant made incriminating statements to Trooper Sweet, including "I'll do my three to five" and "I'll do my time" with respect to the gun recovered by the police. At the booking process the defendant was again advised of his *Miranda* rights and again signed a statement indicating he understood those rights. It is not clear whether the incriminating statements made to Trooper Sweet occurred before or after the second set of *Miranda* warnings.

### C. Legal Analysis

The issue in the instant case is whether or not the defendant exercised his

right to cut off questioning by the police during interrogation at the Youth Violence Strike Force headquarters on Warren Street. Defense counsel contends that by repeatedly answering the questions of the police in the same manner, he was "stonewalling" the police and, thus, manifested his desire to end the interrogation. On direct examination during the evidentiary hearing held January 8, 2007, the following exchange took place between the Assistant United States Attorney and Officer Sullivan:

Q. After Mr. Thomas refused to be questioned further or made any additional statements at the—

[interruption by the Court]

Q. Officer Sullivan, after Mr. Thomas stopped making any statements, essentially your interview was over, correct?

A. That's correct.

On cross examination, Officer Sullivan was asked by defense counsel:

Q. Now, you also testified that after making that statement he refused to answer any more questions, is that correct?

A. Yes, I'd say refused.

On the basis of those exchanges, defense counsel argues that the defendant intended to exercise his *Miranda* rights to terminate further questioning.

The testimony of the other two witnesses, however, does not support such a conclusion. Sgt. O'Leary testified that the defendant was asked what he was doing on Intervale Street in Roxbury several times and that each time he gave a consistent answer: that he had been in the neighborhood to purchase crack cocaine. According to Sgt. O'Leary, the police stopped questioning the defendant not at Thomas' request but because he had repeatedly given the same answers to the officers. That testimony was corroborated by Trooper Jesse Sweet who was also present during questioning at the Youth Violence Strike Force headquarters.

Neither the defendant (in his affidavit) nor defense counsel contends that the defendant requested the officers to stop the interrogation. Counsel's position at the conclusion of the evidentiary hearing was that the defendant effectively invoked his right to terminate interrogation under *Miranda* by "stonewalling" the police but the case law does not support the conclusion that repeatedly answering the same questions in a consistent manner is tantamount to exercising one's right to terminate interrogation.

■ A suspect's invocation of the right to remain silent is not effective unless a reasonable officer would understand from the surrounding circumstances that the suspect is invoking his right to remain silent. *United States v. Hurst*, 228 F.3d 751, 759 (6th Cir.2000). The Supreme Court of the United States held in *Davis v. United States* that a person subject to custodial interrogation

must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.

512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). Since *Davis*, numerous courts, including this one, have extended the "clear articulation" rule to an individual's invocation of the right to remain silent. *United States v. Andrade*, 925 F.Supp. 71, 79 (D.Mass.1996)(Lindsay, J.); *Bui v. DiPaolo*, 985 F.Supp. 219, 227 (D.Mass.1997)(Young, J.).

Several circuits have held that defendants in situations similar to the defendant's here did not sufficiently invoke their right to remain silent following valid *Miranda* waivers. In *Hurst*, the court found that, after making a valid waiver of his *Miranda* rights, the defendant's subse-

quent refusal to answer a specific question about stolen firearms did not constitute a clear assertion of his right to remain silent.

In *United States v. D'Antoni*, the defendant received valid *Miranda* warnings and then made statements to the police. Subsequently, he told the officers that he had provided them with all of the information he had. The Seventh Circuit Court of Appeals held that the defendant's statement did not constitute an invocation of his right to remain silent but was merely an indication that he had little more to offer the officers. 856 F.2d 975, 981 (7th Cir. 1988).

In *Moore v. Dugger*, the Eleventh Circuit held that a defendant who asked of his interrogators "When will you all let me go home?" was not sufficiently invoking his right to terminate interrogation. 856 F.2d 129, 134 (11th Cir.1988) Similarly, in *United States v. Lux*, 905 F.2d 1379, 1382 (10th Cir.1990), the suspect's question during interrogation as to how long it would take if she wanted a lawyer and whether she would have to remain in jail while she waited for one was held not to be an invocation of the right to counsel. Notably, in the instant case there is no allegation that the defendant ever made any request to speak with counsel.

In this case, there is no evidence that the defendant made a "clear articulation" of his right to remain silent following his valid *Miranda* waiver. The defendant was given *Miranda* warnings while at the Youth Violence Strike Force headquarters and proceeded to make voluntary statements to the police. The testimony of the three officers demonstrates that in response to repeated questioning, the defendant continually gave consistent answers. The only indication that the defendant "refused" further questioning stems from the cross examination of Officer Sullivan, who, in response to a question, said "Yeah, I'd say refused." That single statement does not lead this Court to conclude that the defendant articulated an affirmative desire to end the interrogation.

## ORDER

In accordance with the foregoing, the defendant's motion to suppress (Docket No. 21) is **DENIED**.

**So ordered.**